**BILLY J. WILLIAMS, OSB # 901366**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB # 054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
sean.martin@usdoj.gov
Telephone: (503) 727-1010
      Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **KLAMATH-SISKIYOU WILDLANDS CENTER; OREGON WILD; CASCADIA WILDLANDS; SODA MOUNTAIN WILDERNESS COUNCIL,** | Case No. 1:19-cv-02069-CL |
| Plaintiffs, | **DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **U.S. BUREAU OF LAND MANAGEMENT**, | |
| Defendant, | |
| and | |
| **MURPHY COMPANY,** | |
| Defendant-Intervenor. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY OF ACRONYMS ........................................................ vi

INTRODUCTION ....................................................................... 1

ARGUMENT ............................................................................ 2

I.    BLM complied with NEPA in assessing effects on great gray
      owls .............................................................................. 2

      A.   BLM appropriately tiered its 2018 NEPA project analysis
           to its 2016 FEIS ...................................................... 2

      B.   Plaintiffs ignore the key context of the great gray owl's
           undesignated status and congressional direction for O&C
           lands management ..................................................... 5

      C.   Plaintiffs misunderstand NEPA tiering and mischaracterize
           the government's position on tiering ............................... 6

      D.   The case law supports BLM's use of tiering in a project to
           implement specific RMP direction and objectives .................. 8

      E.   The administrative record debunks Plaintiffs' argument
           that there is no evidence of why BLM tiered its analysis ........... 13

      F.   Plaintiffs mischaracterize the project and NEPA
           requirements with regard to owl sites .............................. 14

      G.   Plaintiffs' attempt to challenge the 2016 FEIS is
           inappropriate .......................................................... 16

      H.   Plaintiffs mischaracterize the scientific literature ............... 17

II.   Plaintiffs concede their substantive claims regarding the
      great gray owl.............................................................. 19

III.    BLM in 2016 explained its rationale for an updated species
        management approach that discontinued Survey and Manage,
        and NEPA does not require that Griffin Half Moon re-analyze
        that rationale ................................................................................. 20

IV.    BLM complied with NEPA in assessing effects on the Pacific fisher
        .......................................................................................................... 22

    A.    BLM properly presented fisher analysis with the revised
          EA, and Plaintiffs' technical arguments are ill-supported .......... 22

    B.    BLM appropriately accounted for effects to fishers ..................... 24

    C.    Plaintiffs mischaracterize the government's position on
          tiering and the nature of BLM's tiering analysis in Griffin
          Half Moon ....................................................................................... 26

    D.    Plaintiffs' substantive challenge to BLM's "home range"
          methodology for accounting for fisher effects is
          inappropriate .................................................................................. 30

V.    Plaintiffs clarify that their extra-record declarations are
        meant only for standing and not to support the merits of their
        claims, and Defendant therefore withdraws its objection to the
        declarations ...................................................................................... 31

VI.    The ongoing litigation over the 2016 RMP in U.S. District Court
        for the District of Columbia does not relate to APA review of
        Griffin Half Moon ............................................................................ 32

CONCLUSION ............................................................................................ 33

# TABLE OF AUTHORITIES

## CASES

*Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*,
126 F.3d 1158 (9th Cir. 1997) ........................................................ 31

*Blue Mountains Biodiversity Project v. Blackwood*,
161 F.3d 1208 (9th Cir. 1998) ................................................. 12, 27

*Concerned Friends of the Winema v. U.S. Forest Serv.*,
No. 1:14-cv-737-CL, 2017 WL 5957811 (D. Or. Jan. 18, 2017) .................. 32

*Conservation Nw. v. Rey*, 674 F. Supp. 2d 1232 (W.D. Wash. 2009).............. 16

*Conversation Cong. v. U.S. Forest Serv.*, 371 Fed. App'x 723
(9th Cir. 2010)............................................................... 15

*Defs. of Wildlife v. U.S. Army Corps of Eng'rs*, 2017 WL 1405732
(D. Mont. April 19, 2017)................................................... 18

*Headwaters, Inc. v. BLM*, 914 F.2d 1174 (9th Cir. 1990) ..................... 5

*'Ilio'ulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083 (9th Cir. 2006) ............ 2

*Inland Empire Public Lands Council v. Schultz*, 992 F.2d 977
(9th Cir. 1993)............................................................. 31

*Klamath-Siskiyou Wildlands Ctr. v. BLM*, 387 F.3d 989
(9th Cir. 2004)............................................................. 11

*Klamath-Siskiyou Wildlands Ctr. v. Gerritsma*, 638 Fed. App'x 648
(9th Cir. 2016)........................................................... 14-15

*Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360 (1989) ............... 18-19

*Native Ecosystem Council v. Judice*, 2019 WL 1131231
(D. Mont. March 12, 2019) ......................................... 8, 9, 11

*Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233
(9th Cir. 2005)............................................................. 15

*N. Alaska Envtl. Ctr. v. U.S. Dep't of Interior*, -- F.3d --,
    2020 WL 3866583 (9th Cir. July 9, 2020) ........................................ 12, 13, 28

*Pacific Rivers v. BLM*, __ Fed. App'x ___, 2020 WL 2510759
    (9th Cir. May 15, 2020) ...................................................................... 20

*Pacific Rivers v. BLM*, No. 15-cv-1598-JR, 2018 WL 6735090
    (D. Or. Oct. 12, 2018) .......................................................................... 5

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989)............... 19

*Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989
    (9th Cir. 2006)...................................................................................... 21

## STATUTES

43 U.S.C. § 1181a ................................................................................ 6

43 U.S.C. § 1701 note (b) (Pub. L. 94-579, section 701 (1976)) ......................... 6

43 U.S.C. § 2601 ............................................................................... 1, 6

## REGULATIONS

40 C.F.R. § 1500.1(b)............................................................................ 21

40 C.F.R. § 1500.4(c) ........................................................................... 15

40 C.F.R. § 1502.18 ......................................................................... 22, 23

40 C.F.R. § 1502.20 ............................................................................... 7

43 C.F.R. § 46.140(c) ......................................................................... 2, 6

43 C.F.R. § 46.315(a)........................................................................... 22

43 C.F.R. § 46.315(b)........................................................................... 23

43 C.F.R. § 46.430(a)........................................................................... 23

## FEDERAL REGISTER

85 Fed. Reg. 29,532 (May 15, 2020) .................................................................. 27

## GLOSSARY OF ACRONYMS

| | |
|---|---|
| APA | Administrative Procedure Act |
| AR | (Revised) Administrative Record |
| BLM | U.S. Bureau of Land Management |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| ESA | Endangered Species Act |
| FEIS | Final Environmental Impact Statement |
| FLPMA | Federal Land Policy and Management Act |
| FWS | U.S. Fish and Wildlife Service |
| NEPA | National Environmental Policy Act |
| NWFP | Northwest Forest Plan |
| O&C Act | Oregon and California Lands Act |
| RMP | Resource Management Plan |

## INTRODUCTION

The August 2018 Griffin Half Moon project decision authorizes timber harvest on 932 acres within lands BLM designated in 2016 as "Harvest Land Base" for commercial logging.  Congress designated these lands for timber production in the Oregon and California Lands Act ("O&C Act"), 43 U.S.C. § 2601, *et seq.*

As part of its NEPA review for the Griffin Half Moon project, BLM prepared a 188-page revised Environmental Assessment ("EA") with appendices and informed the public that it was incorporating the NEPA analysis from its 2016 Final Environmental Impact Statement ("FEIS").  The 2016 FEIS addressed the effects of Harvest Land Base logging, and BLM's new reserves network, on great gray owls and the Pacific fisher.  Nothing about the Griffin Half Moon project suggested to BLM's experts that there would be significant effects to these species that were not analyzed in the 2016 FEIS.

As Defendant explains below, Plaintiffs' briefing contains various mischaracterizations and would turn deference to agency expertise on its head.  This Court should grant summary judgment under the APA to Defendant; the Griffin Half Moon decision was neither arbitrary nor capricious.

Page 1    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

# ARGUMENT

## I. BLM complied with NEPA in assessing effects on great gray owls.

### A. BLM appropriately tiered its 2018 NEPA project analysis to its 2016 FEIS.

As encouraged by NEPA regulations, BLM's environmental review for the Griffin Half Moon project appropriately tiered to the 2016 FEIS in assessing effects to great gray owls.  Where an agency is moving from a plan EIS to a site-specific analysis, "tiering is appropriate." '*Ilio'ulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1094 (9th Cir. 2006).  Tiering to a broader-scale EIS is allowed, "so long as any previously unanalyzed effects are not significant."  43 C.F.R. § 46.140(c).  *See* Def.'s Mot. 17-21.

The 2016 FEIS considered the effects of timber harvest to great gray owls from implementing the new Resource Management Plan ("RMP").   The 2016 FEIS found that nearly two-thirds (800) of total known owl sites (1,228) are within reserves.  AR 8944.  Therefore, most actual known sites would continue to be protected.  AR 9226.  Further, implementing the 2016 RMP would "result in an increase in habitat for the great gray owl over current conditions in 50 years."  AR 8066.  *See also* AR 1537, 8938.  The 2016 FEIS took account of the fact that sustained-yield timber harvest in the Harvest Land Base may affect individual great gray owls, but found that most owls

Page 2    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

were located in the protected reserves and predicted that the owl population

would increase over time.  AR 8065-66.

Griffin Half Moon implements the management direction of the 2016

RMP and rests squarely within the 2016 FEIS's analysis.  BLM tiered to the

2016 FEIS and found that the project would not have significant effects to

great gray owls beyond those disclosed in the 2016 FEIS.  *See* AR 3179, 3274,

3341.  BLM found no basis to reject the 2016's FEIS analysis as applied to

this project.  AR 1528-29, 1537.  With its revised EA, BLM acknowledged that

timber harvest can threaten great gray owl habitat, but noted the 2016 RMP

allocates a large reserve network "that accomplishes the goal of protecting

older and more structurally-complex forests, and provides management for

species such as the [great gray owl]."  AR 3341.

Griffin Half Moon was designed to implement the 2016 RMP, which

discontinued Survey and Manage provisions while allocating a larger

network of reserve lands for great gray owls and predicting a long-term

increase in species habitat.  AR 3172, 3218, 3222, 8065-66, 8938.  BLM's use

of NEPA tiering was appropriate, because this site-specific project will not

cause significant effects to the species beyond those disclosed in the 2016

FEIS.  *See* AR 9103-04.

Page 3      Defendant's Reply in Support of Cross-Motion for Summary
            Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
            1:19-cv-02069-CL

Plaintiffs argue that BLM's published Response to Comments was "not analysis," Pls.' Reply 12, but BLM's response emphasized the following analytical points:  1) that the great gray owl is not a designated special status species; 2) that there are specific substantive protections in the project for the species; 3) that BLM took into account the scientific literature regarding great gray owls (*see* AR 1872, 3341); 4) that the 2016 RMP changed BLM's species management framework for these timberlands away from Survey and Manage; and 5) that the 2016 RMP considered the effects of BLM management on the great gray owl and found that habitat would increase over current conditions over the long term view (50 years).  AR 3172.  This analytical framework supports BLM's use of tiering.

As Plaintiffs say, maintaining quality species habitat should be compatible with forest management for commodity resources, "if management takes a long term view."  Pls.' Mot. 10.  BLM here took that long-term view and provided a reasoned explanation for why it did not study great owl effects in further detail or consider a project alternative that would track Survey and Manage.

**B.    Plaintiffs ignore the key context of the great gray owl's undesignated status and congressional direction for O&C lands management.**

Plaintiffs' reply does not address several key contextual points that support BLM's use of NEPA tiering.  First, the great gray owl is neither designated as a BLM Sensitive Species nor listed under the Endangered Species Act ("ESA"), *see* AR 3172, and NEPA does not require a detailed stand-alone project effects analysis with regard to every species of wildlife. For BLM-designated Sensitive Species, BLM policy specifies various land management procedures, AR 12518, but there are no such measures for undesignated species including the great gray owl.  *See* AR 3325 (revised EA's description of BLM policy regarding its designated Sensitive Species). This factual backdrop supports BLM's decision to tier to its 2016 NEPA analysis.

Second, Plaintiffs ignore that for O&C lands, this Court has recognized that the O&C Act "is a 'primary' or 'dominant' use statute for sustained-yield timber production." *Pacific Rivers v. BLM*, No. 15-cv-1598-JR, 2018 WL 6735090, at *17 (D. Or. Oct. 12, 2018).  Further, "wildlife habitat conservation . . . is [not] a goal of the O&C Act at all." *Id.* (quoting *Headwaters, Inc. v. BLM*, 914 F.2d 1174, 1184 (9th Cir. 1990)).  Under formal BLM policy, even the management of Sensitive Species on O&C lands "must

Page 5    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

be consistent with timber production as the dominant use of those lands." AR 12520. This supports BLM's use of tiering here, because the great gray owl has no special or Sensitive Species designation.

To avoid the O&C Act, Plaintiffs attempt to rely on the Federal Land Policy and Management Act ("FLPMA"), Pls.' Reply 2, but this is wrong in this case. That is because Griffin Half Moon is on O&C lands and FLPMA expressly provides that "in the event of conflict with" the O&C Act and FLPMA, the O&C Act "shall prevail" over FLPMA regarding "management of timber resources." 43 U.S.C. § 1701 note (b), Pub. L. 94-579, section 701 (1976).[1]

### C.    Plaintiffs misunderstand NEPA tiering and mischaracterize the government's position on tiering.

In the 2016 FEIS, BLM published its analysis of the effects on great gray owls of timber projects in the Harvest Land Base coupled with reserve lands. Then, in Griffin Half Moon, BLM told the public it was tiering to the 2016 FEIS's analysis regarding the species because there would be no significant effects that were previously unanalyzed in the 2016 FEIS. *See* AR 3179; 43 C.F.R. § 46.140(c).

---

[1] This provision in FLPMA references the O&C Act as at 43 U.S.C. § 1181a; section 1181a has since been transferred to 43 U.S.C. § 2601.

Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

Plaintiffs fail to point to any facts in the administrative record indicating there are significant effects not analyzed in the FEIS for great gray owls at Griffin Half Moon.  Plaintiffs argue instead that tiering may only occur if a prior EIS undertook "site-specific analysis" regarding "localized effects" for each future project.  Pls.' Reply 5.  This interpretation is unworkable and would eliminate the use of NEPA tiering.  No RMP could possibly analyze every future timber project at a project-specific scale.

In fact, NEPA provides that whenever a "broad" EIS has been prepared and a subsequent EA is then prepared "on an action included within the entire program or policy (such as a site specific action)," the EA "need only summarize the issues discussed" in the broader EIS, "incorporate discussions from" the broader EIS, and "shall concentrate on the issues specific to the subsequent action." 40 C.F.R. § 1502.20.  NEPA tiering nowhere requires that the prior plan-level EIS undertake site-specific analysis at a project scale.  Here, the 2016 FEIS analyzed effects to the great gray owl from timber management on Harvest Land Base lands (including the Griffin Half Moon lands) although its scale was not "specific" only to Griffin Half Moon but encompassed all the Harvest Land Base lands.  *See* AR 6326, 7277 (maps from 2016 FEIS and 2016 RMP showing Harvest Land Base allocations).

Plaintiffs also mischaracterize the government's position on tiering.

Plaintiffs say that BLM's position is that "NEPA does not apply to site-specific projects" because the project is on O&C lands.   Pls.' Reply 1. Not so. BLM recognizes that NEPA applies to site-specific projects on O&C lands, which is why BLM undertook a NEPA process in Griffin Half Moon.

### D.   The case law supports BLM's use of tiering in a project to implement specific RMP direction and objectives.

As Defendant established, the recent district court ruling in *Native Ecosystem Council v. Judice* ("*Judice*"), supports the use of tiering here.  2019 WL 1131231, at *4 (D. Mont. March 12, 2019); Def.'s Mot. 19-20.  In *Judice*, the court approved BLM's tiering in an EA to the wildlife analysis from an earlier EIS for the broader-scale RMP.  *Id.* at *6.  The project at issue in *Judice* involved vegetation treatments and grazing measures to "implement[s] the objectives already authorized by the RMP."  *Id.*  Therefore, tiering was "particularly relevant" given "the relationship of the RMP to the EA."  *Id.* at *4.

Plaintiffs argue that the RMP in *Judice* authorized "future grazing in a site-specific location."  Pls.' Reply 6.  But RMPs do not directly authorize on-the-ground projects.  As Plaintiffs emphasize, an RMP decision "do[es] not directly authorize implementation of on-the-ground projects."  Pls.' Reply 6 n.2.  Plaintiffs' argument is wrong, because if the RMP had already

Page 8      Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

authorized the site-specific grazing (and the specific vegetation treatments) at issue in *Judice*, there would have been no point for BLM to undertake the later EA.

The situation in *Judice* is closely akin to the situation with Griffin Half Moon. The RMP in *Judice* authorized grazing as an approved land use for an area, and the subsequent EA analyzed a specific project proposal for grazing within that area analyzed under the RMP; thus, tiering was appropriate. The RMP in *Judice* also provided the "objectives and authorization" for particular vegetation treatments, and the EA studied specific implementation of those treatments. *Id*. at *7. Similarly, with the instant case, the 2016 RMP authorized the use of specific timber harvest treatments such as regeneration harvest and commercial thinning on lands it designated as the Harvest Land Base. *See* AR 6342, 6344, 6404. The 2016 FEIS accounted for the effects of these specific harvest treatments n great gray owls (and fishers). *See* AR 8064-66, 8093-99, 9103-04. Then, the Griffin Half Moon project decided to implement these very treatments on a specific portion of the Harvest Land Base after finding there were no significant great gray owl effects not disclosed in the FEIS. As with *Judice*, tiering was appropriate with regard to great gray owl (and fisher) effects.

Plaintiffs attempt to distinguish *Judice* because they say the 2016
FEIS here has no analysis of the effects of the Griffin Half Moon project on
great gray owls and fishers.  Pls.' Reply 7.  But this misses the point of
tiering, because the 2016 FEIS analyzed the effects to great gray owls and
fishers from Harvest Land Base timber management, and Griffin Half Moon
is implementing the objectives and approved treatments on the 2016-
designated Harvest Land Base.  The effects of timber management of the
Harvest Land Base, including the Griffin Half Moon lands, were disclosed in
the 2016 FEIS.  Plaintiffs demand the impossible by arguing that the
analysis for a broad RMP must document the effects of each future timber
sale, in order for tiering to later be available.  Further, if the effects of each
future project must already be disclosed at the plan level, there would be no
point in undertaking <u>any</u> later project-level NEPA review.

Nor did the 2016 RMP here simply "contemplate[]" timber harvest
"generally."  Pls.' Reply 7 n.3.  Instead, the 2016 RMP specifically directed
particular harvest treatments on the designated Harvest Land Base.  *See* AR
6342, 6344 (provisions in RMP directing that BLM undertake regeneration
harvest and commercial thinning treatments on Harvest Land Base lands);
AR 6404 (emphasizing that by the RMP's "allocation of the Harvest Land

Base, the BLM makes available all lands within this land use allocation

available for timber harvest").

Plaintiffs also try to distinguish *Judice* by noting that, in that case, the

EA undertook "extensive analysis" of alternatives.  Pls.' Reply 7 (citing

*Judice*, 2019 WL 1131231, at *5).  But Plaintiffs here do not challenge the

range of alternatives in Griffin Half Moon, and BLM considered an

alternative to restrict harvest in previously deferred great gray owl sites.  AR

3274.  Further, as in *Judice*, the revised EA considered effects to a range of

resources.  AR 3278-326.  As in *Judice*, Plaintiffs fail to take into account the

"entire" EA and the "tiered RMP."  *Judice*, 2019 WL 1131231, at *6.

Plaintiffs argue that "the facts of" *Klamath-Siskiyou Wildlands Ctr. v.

BLM*, 387 F.3d 989 (9th Cir. 2004) are "on all fours with the fact of present

case."  Pls.' Reply 7.  But the facts of *Klamath-Siskiyou* were different: that

case involved several timber-sale EAs that did not adequately consider the

"cumulative" or combined effects of the sales taken together on a particular

watershed.  *Id.* at 993-97.  Further, in that case, the EAs could not tier to an

earlier RMP analysis regarding cumulative effects of logging because that

earlier analysis did not discuss the cumulative impacts to the watershed from

the specific timber sales.  *Id.* at 997-98.  Here, by contrast, cumulative effects

are not at issue and only a single EA is challenged.  This EA assessed a

Page 11     Defendant's Reply in Support of Cross-Motion for Summary
            Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
            1:19-cv-02069-CL

project to implement the management direction consistent with the 2016 RMP for harvest treatments in the Harvest Land Base.  And this 2018 EA tiered to the 2016 FEIS which specifically analyzed effects on great gray owls and fishers from timber management.  Griffin Half Moon is implementing this authorized management approach on a portion of these lands, and there are no issues regarding cumulative effects from other projects.  Plaintiffs also state, without any analysis, that *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1214 (9th Cir. 1998) assists them.  Pls.' Reply 7.  But they fail to respond to any of Defendant's points distinguishing *Blue Mountains*.  *See* Def.'s Mot. 24-25.

The recent decision in *N. Alaska Envtl. Ctr. v. U.S. Dep't of Interior*, -- F.3d --, 2020 WL 3866583 (9th Cir. July 9, 2020), does not assist Plaintiffs.  *See* ECF 43 (Plaintiffs' notice of supplemental authority).  There, an initial 2012 EIS already authorized "actual lease sales," and therefore a 2017 "lease sale offering did not require a new tiered or stand-alone NEPA analysis."  2020 WL 3866583, at *14, *15.  But here, the 2016 FEIS did not authorize the Griffin Half Moon project itself, which is why BLM undertook a new project-level NEPA analysis.  And in that project-level analysis, BLM was permitted to tier to the 2016 FEIS.  As *N. Alaska* notes, tiering is appropriate to incorporate a previous "broader" EIS "that covers matters more general in

Page 12    Defendant's Reply in Support of Cross-Motion for Summary
           Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
           1:19-cv-02069-CL

nature," *id.* at *10, and NEPA tiering regulations "generally assume that the subsequent site-specific action is consistent with the previously studied broad-scale plan." *Id.* at *11. Here, nothing in the administrative record rebuts BLM's finding that project effects to great gray owls are consistent with the effects disclosed in the 2016 FEIS.

### E. The administrative record debunks Plaintiffs' argument that there is no evidence of why BLM tiered its analysis.

Plaintiffs argue that there is "no deliberative evidence" in the record regarding how BLM decided to tier its effects analysis regarding great gray owls to the analysis in the 2016 FEIS. Pls.' Reply 8. According to Plaintiffs, BLM's tiering decision "appears out of thin air" in the Finding of No Significant Impact. *Id.* That is not true. For example, Appendix B of the revised EA discussed great gray owls and explained how Griffin Half Moon was implementing the direction in the 2016 RMP consistent with the effects disclosed from the 2016 FEIS. AR 3341. *See also* 3172 (BLM's Response to Comments, noting that great gray owls are not a "special status species," that there are substantive project protections for the species, and finding that effects to the species were considered in the 2016 FEIS); AR 1528-29 (BLM response to Plaintiffs' administrative protest and addressing great gray owl issues)

Page 13    Defendant's Reply in Support of Cross-Motion for Summary
         Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
         1:19-cv-02069-CL

Plaintiffs are wrong that there is "zero" evidence of BLM expert biologist analysis regarding effects to the species. Pls.' Reply 3. The EA identifies the project's wildlife biologist by name, AR 3330, and that expert has longstanding species expertise; his biography from 2004 identifies his great gray owl expertise. AR 13988. The wildlife biologist noted that great gray owl sites have been documented "from some of the lowest points in the Ashland Field office to some of the highest." AR 1872. Further, Appendix B to the revised EA noted that BLM considered other scientific publications regarding the species and explained why a Griffin Half Moon alternative was not considered in detail to avoid harvest in previous owl sites, given the controlling framework of the 2016 RMP. AR 1528, 3341.

## F.    Plaintiffs mischaracterize the project and NEPA requirements with regard to owl sites.

Plaintiffs suggest BLM violated NEPA in not disclosing the number of owl nest sites "that it intends to log." Pls.' Reply 3. But the project's design requires not only retention of nest trees but restricts project work within a quarter-mile of owl sites for more than four months each year. AR 3172, 3265. In any event, NEPA did not require disclosure of the number of owl sites. *See Klamath-Siskiyou Wildlands Ctr. v. Gerritsma*, 638 Fed. App'x 648, 650-51 (9th Cir. 2016) (memorandum disposition) (rejecting a NEPA

challenge to BLM Medford timber project and finding that BLM "is not required to set forth exact locations and numbers of trees that would, or might be removed").

Plaintiffs concede that NEPA does not require that BLM search for undocumented owl sites, Pls.' Reply 11.  Nevertheless, Plaintiffs say BLM violated NEPA because it was "possible" there were "additional, but unknown, owls located in unsurveyed harvest units."  *Id.*  But NEPA requires study of "likely" effects, not possible effects on possible unknown individual owls in an undesignated and unlisted species.  *See Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1239 (9th Cir. 2005). Further, there is no NEPA duty to monitor species populations.  *See Conversation Cong. v. U.S. Forest Serv.*, 371 Fed. App'x 723, 727-28 (9th Cir. 2010) (memorandum disposition).  This is especially so with regard to O&C lands management and with regard to an undesignated species whose population is expected to increase on BLM lands under the very framework that Griffin Half Moon is implementing.  *See* 40 C.F.R. § 1500.4(c) ("NEPA's purpose is not to generate paperwork, even excellent paperwork").

**G.    Plaintiffs' attempt to challenge the 2016 FEIS is inappropriate.**

Plaintiffs appear to challenge the quality or adequacy of the 2016 FEIS's wildlife effects analysis, but Plaintiffs already challenged that FEIS in challenging the 2016 RMP, and the Ninth Circuit has "upheld the validity of the 2016 RMP and its land use allocations." Pls.' Reply 15. This bars their attempt now to challenge the adequacy of the 2016 FEIS's analysis. *See* Pls.' Reply 15 (criticizing the 2016 FEIS analysis for supposedly relying on "a prior, legally invalidated analysis"). Plaintiffs are also wrong that the 2016 FEIS referenced the phrase "great gray owl" only once; in fact, the FEIS referenced the species at least twelve times. *See* AR 8064, 8065, 8066, 8938, 8944, 8945. Nor does *Conservation Nw. v. Rey*, 674 F. Supp. 2d 1232, 1247 (W.D. Wash. 2009) undermine the 2016 FEIS, because that case was about the sufficiency of the prior Northwest Forest Plan's ("NWFP") reserves. Here, the 2016 RMP enhances reserves beyond those set aside by the NWFP. *See* AR 3181, 6305-06.

Plaintiffs' counsel characterizes the scientific literature as showing that owl persistence is of "serious concern," Pls.' Reply 14, citing studies from 1994 and 2010 (*id.* at 13-14, citing AR 12159-60, 21675, 21907). But again, this is a belated and inappropriate challenge to the 2016 RMP, which decided to

discontinue Survey and Manage framework for the great gray owl in favor of an updated species management framework that will impact owls in the Harvest Land Base but increase protected owl reserve habitat.  Plaintiffs ignore BLM's analysis underlying the 2016 RMP, which found that management under the updated Harvest Land Base/reserve framework would likely increase the great gray owl population and increase the species' available habitat over time.  *See* AR 8065-66, 9103-04, 9226.

Plaintiffs' concerns with BLM's 2016 change to the framework could and should have been brought in litigation against the 2016 RMP.  This is especially so because Plaintiffs' argument relies on studies that were published years before the 2016 RMP rather than the great gray owl predictions in the 2016 FEIS itself or any subsequent new information.  As the record shows, Griffin Half Moon is not "an exercise in policy creation" but is "simply implementing" the management direction "established" in the 2016 RMP.  AR 1528; *see also* AR 3172.

### H.    Plaintiffs mischaracterize the scientific literature.

Plaintiffs' counsel wrongly characterizes the 2010 Hull study as "conclud[ing] that the Oregon population of great gray owls is important to California's population."  Pls.' Reply 13.  According to Plaintiffs' counsel, Hull found that there is "little gene flow" between Oregon and California

Page 17      Defendant's Reply in Support of Cross-Motion for Summary
             Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
             1:19-cv-02069-CL

populations, and counsel then speculates that BLM land management "may be contributing to this genetic isolation." Pls.' Reply 140. But, in fact, Hull emphasized that great gray owls in California are distinct and naturally isolated from great gray owls in Oregon. AR 12159, 12162, 12155. Further, BLM's biologist for the Griffin Half Moon project is one of co-authors of the Hull study. AR 12154. There is naturally no connection between the two separate owl populations and no science suggesting that BLM management contributes to the populations' separation.

Plaintiffs impugn Defendant's response to their characterizations of scientific literature regarding the great gray owl. Pls.' Reply 12-14. But Defendant appropriately cited specific science in the record finding the great gray owl is adapted to catching prey in open habitats and early forest successional stages and can likely persist within areas where there is timber harvest. AR 18296. Plaintiffs argue that the "best available science" shows timber harvest would harm great gray owls, Pls.' Reply 9, but that standard is not a part of NEPA and does not relate to their NEPA claims. *See Defs. of Wildlife v. U.S. Army Corps of Eng'rs*, 2017 WL 1405732, at *5 (D. Mont. April 19, 2017). Instead, under NEPA, BLM "must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original

Page 18    Defendant's Reply in Support of Cross-Motion for Summary
           Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
           1:19-cv-02069-CL

matter, a court might find contrary views more persuasive." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989).

For all these reasons above, this Court should grant BLM's cross-motion against Plaintiffs' NEPA claim regarding the great gray owl.

## II.    Plaintiffs concede their substantive claims regarding the great gray owl.

In their opening brief, Plaintiffs asserted that BLM "failed to implement protective measures" for great gray owls in Griffin Half Moon. Pls.' Mot. 22.  But it is well settled that NEPA itself does not mandate particular results, and simply prescribes the necessary process.  Def.'s Mot. 26 (citing *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)).

Plaintiffs now concede that "this case is not about 'protecting' wildlife (a substantive question)."  Pls.' Reply 15 n.7.  Nevertheless, Plaintiffs still attempt to challenge the substance of the project's protections for great gray owls.  AR 3172, 3265[2]; Pls.' Reply 11.  Plaintiffs argue that BLM "failed to provide any conservation measures for great gray owls" in the project

---

[2] The seasonal restriction corresponds with the great gray owl's incubation, brooding, late nestling, and fledging periods.  *See* AR 13970.

Page 19    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

planning area.  Pls.' Reply 17.  These are substantive issues not before this Court in this NEPA action.

Plaintiffs' reply also argues, for the first time, that the project's substantive protections for great gray owls were not made clear to the public. Pls.' Reply 10.  But Plaintiffs ignore that BLM's Response to Comments told the public that the Revised EA's substantive raptor protections (AR 3265) apply to great gray owls.  AR 3172.  As BLM explained, although great gray owls are "not a special status species," the project includes nest-tree and seasonal restrictions to "help to protect" the species.  *Id*.

## III. BLM in 2016 explained its rationale for an updated species management approach that discontinued Survey and Manage, and NEPA does not require that Griffin Half Moon re-analyze that rationale.

Plaintiffs concede that the 2016 RMP explained "why BLM decided to eliminate the Survey and Manage program."  Pls.' Reply 17.  Plaintiffs also acknowledge that the Ninth Circuit upheld the legality of the 2016 RMP against their NEPA challenge.  *See Pacific Rivers v. BLM*, __ Fed. App'x ___, 2020 WL 2510759, at *2 (9th Cir. May 15, 2020) (memorandum disposition) (concluding that BLM provided a "reasoned explanation" for any change from its prior management approach).  As Plaintiffs allege in their complaint here, given the 2016 RMP, Survey and Manage no longer applies to BLM lands in

Page 20    Defendant's Reply in Support of Cross-Motion for Summary
Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
1:19-cv-02069-CL

southwest Oregon.  ECF 1 ¶ 9.

Nevertheless, Plaintiffs' reply argues that the 2016 RMP's explanation regarding the discontinuation of Survey and Manage was only general and that Griffin Half Moon failed to "specifically" discuss its discontinuation. Pls.' Reply 17. But BLM told the public in the revised EA that Survey and Manage was no longer part of its land management framework.  Def.'s Mot. 29 (citing AR 3274, 1529, 6305-06).  Nor does Plaintiffs' complaint allege that BLM failed to meet a NEPA duty in Griffin Half Moon to further analyze the discontinuation of Survey and Manage.  *See* ECF 1.  "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Products, Inc. v. Southwall Technologies, Inc*., 435 F.3d 989, 992 (9th Cir. 2006) (internal quotation omitted).

There was no NEPA duty in Griffin Half Moon for BLM to again analyze the rationale for the 2016 RMP's adoption of a new species management framework.  BLM had already reached that decision in 2016 after extensive expert analysis and public involvement.  *See* AR 6312-13, 7191, 8260-61.  In Griffin Half Moon, there was no NEPA mandate to reprise analysis for a decision already made.  "Most important, NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail."  40 C.F.R. § 1500.1(b).

Page 21    Defendant's Reply in Support of Cross-Motion for Summary
Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
1:19-cv-02069-CL

## IV.   BLM complied with NEPA in assessing effects on the Pacific fisher.

### A.   BLM properly presented fisher analysis with the revised EA, and Plaintiffs' technical arguments are ill-supported.

As Defendant established, it was appropriate for BLM to employ an EA appendix to discuss the fisher.  Def.'s Mot. 34-35.  The "four corners" of BLM's revised EA—including its Table of Contents—specifically referenced the appendix and the appendix was provided to the public as part of the revised EA.  AR 3214, 3228-29, 3359-60.  Under BLM's NEPA regulations, this format allowed for appropriate planning and public participation.  43 C.F.R. § 46.315(a).  Indeed, BLM's original EA included the same appendix and Plaintiffs commented on its contents.  AR 4592-619, 4013-15.

Plaintiffs' argument that it was wrong for BLM to employ an appendix is at odds with their representation in this case that the information supporting an agency decision may be in the administrative record and referred to by the EA.  Pls.' Mot. 25.  Here, BLM plainly meets this standard espoused by Plaintiffs:  the administrative record includes BLM's 2016 FEIS, the 2016 RMP, and the revised EA appendices, and these documents are expressly referenced or included in the revised EA itself.  *See*, *e.g.*, AR 3214, 3218, 3225, 3228-29.

Plaintiffs concede that the dictates of 40 C.F.R. § 1502.18 apply only in

Page 22    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

the context of an EIS, not the EA at issue here.  Pls.' Reply 19.  Nevertheless, Plaintiffs' reply argues for the first time that section 1502.18 and 43 C.F.R. § 46.430(a) establish that an appendix may only be used with an EIS and not with an EA.  *Id.*  But these regulations say nothing of the sort and Plaintiffs cite no case law to support their novel and drastic interpretation.  What NEPA regulations require for appendices in an EIS does not restrict or forbid the use of an appendix in an EA.  40 C.F.R. § 1502.18; 43 C.F.R. § 46.430(a).

As Defendant established, BLM appropriately published the revised EA with clear accompanying documents including the appendix.  Def.'s Mot. 35 (citing 43 C.F.R. § 46.315(b)).  But for the first time in their reply, Plaintiffs complain that Appendix C violated section 45.315(b), because it failed to analyze the environmental effects of BLM's proposed action and alternatives and illegally contained effects analysis apart from the remainder of the effects analysis in the revised EA.  Pls.' Reply 20.  Plaintiffs are wrong, because the term "the document" in section 46.315(b) refers to an environmental assessment, not to an accompanying document.  Here, the revised EA's effects analysis was not "spread throughout or interwoven into other sections" of the revised EA.  Instead, for the issues it considered in detail, the revised EA assessed the effects of the proposed action and alternatives, tiered its analysis to the 2016 FEIS, and identified Appendix C

for discussion of particular issues that were considered but not analyzed in detail.  AR 3228-29, 3359-60.  Appendix C was clearly identified and separated the issues not considered in detail from the main body of issues in the revised EA.

> **B.   BLM appropriately accounted for effects to fishers.**

As Defendant also established, BLM rationally tiered to its fisher effects analysis in the 2016 FEIS in its analysis of Griffin Half Moon.  That 2016 FEIS addressed the effects of timber harvest activities within the Harvest Land Base on the fisher.  BLM also provided project-specific information regarding fishers that supports its finding that further NEPA study of fisher effects was not required for Griffin Half Moon.  Def.'s Mot. 32-41.  *See* AR 3228-29, 3359-60, 1526.

None of Plaintiffs' reply arguments establish that BLM was arbitrary and capricious.  Plaintiffs argue that the 2016 FEIS's discussion of the fisher was only "general and generic."  Pls.' Reply 18.  But in the FEIS, BLM "conducted a detailed and quantified analysis of the alternatives on fisher habitat."  AR 9229; *See* AR 8088-99, 8956-68.  This was based on detailed vegetation modeling to address the habitat effects of timber operations on the Harvest Land Base.  *See* AR 7317-22, 8400-464.  Notably, Plaintiffs never challenged that fisher analysis in their unsuccessful litigation against the

Page 24      Defendant's Reply in Support of Cross-Motion for Summary
             Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
             1:19-cv-02069-CL

2016 RMP.

In its 2016 FEIS, BLM described the fisher's range and its habitat and provided a detailed, quantified analysis of the effects of timber harvesting (within the Harvest Land Base) on the species.  AR 3359-60, 8088-99, 8956-68.  Then, for Griffin Half Moon, a Harvest Land Base project, BLM disclosed that the project would affect fisher habitat, as "anticipated under the RMP." AR 3360.  Indeed, for lands in the Harvest Land Base, the 2016 FEIS already disclosed that fisher habitat would decline under initial RMP implementation.  AR 8964.  Implementing Griffin Half Moon will not cause significant effects beyond those disclosed in the FEIS.

Plaintiffs argue that "no deliberative evidence" supports BLM's finding that Griffin Half Moon's effects to fishers would be consistent with BLM's predictions under the 2016 RMP.  Pls.' Reply 8, 21.  But Plaintiffs ignore the specific project-level analysis that BLM provided the public with the revised EA.  *See* AR 3359-60.  That analysis acknowledged that there would be negative effects to fisher habitat given project activity on Harvest Land Base acreage, but found that this activity was anticipated and analyzed for in the 2016 RMP.  Further, BLM's Griffin Half Moon analysis found that project design features would help retain fisher habitat elements such as large down wood and snags and that the project was directly adjacent to reserve lands

Page 25    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

that would continue to provide habitat suitable for fisher life history purposes.  AR 3360.

Plaintiffs say there are no "habitat considerations" identified in BLM's revised EA appendix discussing the fisher.  Pls.' Reply 22.  They are wrong because BLM's fisher analysis area took into account key habitat considerations including fisher denning/resting/foraging and the structural complexity and canopy cover of the forests here, and because BLM included project protections to retain key habitat elements.  *See* AR 3311-12, 3265, 3359-60.

   **C.    Plaintiffs mischaracterize the government's position on tiering and the nature of BLM's tiering analysis in Griffin Half Moon.**

Plaintiffs mischaracterize the government's position regarding NEPA tiering.  According to Plaintiffs, under the government's position, "it would be impossible to ever exceed the effects analyzed" in the 2016 FEIS unless the "impossibility" occurred of BLM harvest on more acres than managed by BLM.  Pls.' Reply 21.

In fact, it is the government's position that subsequent hypothetical developments after the 2016 FEIS—although absent here—could in a different case restrict the use of tiering for a project inside the Harvest Land Base.  For example, significant ecological developments occurring on these

Page 26    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

lands after the 2016 FEIS could call for a new, stand-alone effects analysis. Illustratively, in *Blue Mountains Biodiversity Project v. Blackwood*, an agency EA could not tier to a broader plan-level EIS analysis because that EIS did not evaluate the effects of a catastrophic fire that occurred after the EIS was completed but before the agency prepared an EA for a timber salvage project.  161 F.3d 1208, 1210, 1214 (9th Cir. 1998).

Here, no catastrophic fire or similar event occurred after the 2016 FEIS and Plaintiffs fail to allege any significant developments that have occurred since the 2016 FEIS that would require new and further fisher habitat effects analysis in Griffin Half Moon.  Instead, the U.S. Fish and Wildlife Service ("FWS") recently published a final rule finding a "widespread distribution" of the fisher in actively managed landscapes and that "fishers continue to persist in actively managed landscapes."  85 Fed. Reg. 29,532, 29,553 (May 15, 2020).

It is also the government's position that NEPA tiering would not be possible if BLM's EA had proposed project-level management that departed from the 2016 RMP or sought to authorize actions that were not analyzed in 2016.  But that is not Griffin Half Moon.  Griffin Half Moon simply implemented management direction consistent with the 2016 RMP and nothing in the administrative record shows that effects to fishers would be

Page 27    Defendant's Reply in Support of Cross-Motion for Summary
            Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
            1:19-cv-02069-CL

meaningfully different from those already accounted for in 2016.

"[C]onformity with the initially analyzed plan or program is relevant to

NEPA requirements." *N. Alaska Envtl. Ctr. v. U.S. Dep't of Interior*, -- F.3d --

, 2020 WL 3866583, at *11 (9th Cir. July 9, 2020).  Griffin Half Moon is in full

conformity with the 2016 RMP.

Plaintiffs also mischaracterize BLM's Griffin Half Moon fisher tiering

analysis as a bare "mathematical exercise."  According to Plaintiffs, BLM

simply noted the project's harvest footprint was less than the acreage studied

in the 2016 FEIS and therefore found that project effects were "less than"

those considered in 2016.  Pls.' Reply 21; *id.* at 8-9 (BLM's tiering "states the

obvious").  To the contrary, BLM looked at the nature of the treatments in

Griffin Half Moon and whether those would cause significant effects beyond

those already taken into account in the 2016 FEIS analysis.

BLM's tiering analysis was based on a specific accounting of the nature

of fisher effects at the project level and the fact that such effects are

consistent with the fisher effects predicted in the 2016 FEIS from timber

projects in the Harvest Land Base.  *See* AR 8088, 8091 (excerpts from 2016

FEIS showing that BLM accounted for effects of BLM management on fishers

throughout fisher's range).  The reduction in fisher habitat associated with

harvest in Griffin Half Moon is straight in line with the type and extent of

Page 28    Defendant's Reply in Support of Cross-Motion for Summary
           Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
           1:19-cv-02069-CL

effects that were anticipated in 2016. Nor was the fisher analysis in the 2016 FEIS the "last word" on project-level effects to the species. Pls.' Reply 20. Instead, with the revised EA, BLM explained why it was not assessing fisher effects in detail given specific findings of how project effects were consistent with the effects accounted for in the 2016 analysis. AR 3359-60.

Plaintiffs also argue that because Griffin Half Moon timber activities occur only on the Harvest Land Base, not in reserves, it was "irrelevant" that the 2016 RMP predicted that fisher habitat would increase in reserves. Pls.' Reply 23. But BLM in 2016 also predicted that fisher habitat would decline in the Harvest Land Base and that is relevant to BLM's tiering analysis here. AR 8964. What is irrelevant is Plaintiffs' attempt to isolate habitat increases in reserves. Increased late-successional reserves (31% of total BLM-managed acreage), coupled with the habitat decline in the Harvest Land Base (20% of total BLM-managed acreage) is why effect fishers were as described in the FEIS. *See* AR 6321, 6305-06.

Moreover, in studying the Griffin Half Moon project, BLM noted that fishers have large home ranges, are mobile, and that there are late-successional reserve lands directly adjacent to the project. AR 3360. Given these nearby protected acreages, and protections within the project area itself, BLM rationally found that project-level fisher effects would be minimal

Page 29      Defendant's Reply in Support of Cross-Motion for Summary
             Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
             1:19-cv-02069-CL

and that further study of fisher effects was not warranted.

> ### D. Plaintiffs' substantive challenge to BLM's "home range" methodology for accounting for fisher effects is inappropriate.

For the first time, Plaintiffs' reply questions the substantive integrity of BLM's fisher-effects methodology, because BLM accounted for fisher habitat effects at the species home-range scale rather than simply at the smaller scale of project timber treatments. Pls.' Reply 22. But this NEPA case is about procedures, not substantive methodologies.

Further, it was rational for BLM to look beyond just the footprint of proposed treatments to account for fishers and for BLM to employ the same analysis area for fisher as it employed to gauge northern spotted owl effects. This is because timber treatments encompass only a small fraction of the fisher's home range footprint and fisher habitat does not simply begin or end at the treatment-area borders. *See* AR 9229 (statement in 2016 FEIS that the fisher has a "large home range"). The species is highly mobile, AR 6758-59, and the 2016 FEIS emphasized that fishers are capable of navigating around rivers, highways, and rural communities. AR 9229. *See* AR 3360 (BLM noting with Griffin Half Moon revised EA that "fishers are highly mobile" and have "large home ranges"). Indeed, Plaintiffs' complaint in this case emphasized—but did not challenge—that this project's "planning area"

Page 30     Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

encompasses fisher home ranges.  ECF 1 ¶ 57.  .

In any event, NEPA "does not require adherence to a particular analytic protocol."  *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1188 (9th Cir. 1997).  Under NEPA, a court need not decide whether an EA is based on the best methodology available, and courts defer to agency expertise on questions of methodology.  *Inland Empire Public Lands Council v. Schultz*, 992 F.2d 977, 981 (9th Cir. 1993).

For these reasons this Court should grant BLM's cross-motion against Plaintiffs' NEPA claim regarding the fisher.

**V.    Plaintiffs clarify that their extra-record declarations are meant only for standing and not to support the merits of their claims, and Defendant therefore withdraws its objection to the declarations.**

In seeking summary judgment on their NEPA claims, Plaintiffs appeared to rely on a series of declarations written during this litigation rather than during the NEPA process that is at issue.  *See* Pls.' Mot. 10, 17, 19-20 (citing declarations at ECF 33 through 39).  As Defendant then noted, these post-decisional declarations are outside the administrative record and should not be considered in reviewing the merits of the claims under the APA.  Def.'s Mot. 29-30.  Nor did Plaintiffs seek leave to supplement the administrative record.

Page 31    Defendant's Reply in Support of Cross-Motion for Summary
            Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
            1:19-cv-02069-CL

Plaintiffs now clarify the declarations are "standing declarations."  Pls.'
Reply 23.  Counsel for the parties also conferred by phone on July 8, 2020,
and Plaintiffs' counsel stated that the declarations are meant only for
standing and not to establish the merits of their claims.

With these clarifications, Defendant withdraws its objections to the
declarations.

## VI.    The ongoing litigation over the 2016 RMP in U.S. District Court for the District of Columbia does not relate to APA review of Griffin Half Moon.

Plaintiffs acknowledge that the Ninth Circuit has "upheld the validity of
the 2016 RMP and its land use allocations."  Pls.' Reply 15.  Nevertheless, they
attempt to bolster their case for summary judgment here by citing a timber
industry lawsuit against BLM in D.C. federal court and the industry's pending
request for relief against BLM in that case.  *Id.* 2, 15-16.  But it is only a matter
of speculation what the D.C. court may order in way of any relief regarding the
2016 RMP which currently remains in full force and effect.

Further, as this Court is well aware, judicial review of the Griffin Half
Moon decision looks to the Griffin Half Moon administrative record that
existed when BLM made the project decision.  Post-decisional evidence such
as current proceedings in another lawsuit is not a proper basis to attack the
agency's 2018 decision here under the APA.  *See, e.g., Concerned Friends of*

Page 32       Defendant's Reply in Support of Cross-Motion for Summary
              Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No.
              1:19-cv-02069-CL

the *Winema v. U.S. Forest Serv.*, No. 1:14-cv-737-CL, 2017 WL 5957811, at *1 (D. Or. Jan. 18, 2017).  The D.C. case is a separate case involving separate legal issues and its ongoing proceedings are irrelevant to whether BLM complied with NEPA in the present case before this Court.  *See* Pls.' Reply 2.

In any event, the industry's request for a bar on ESA consultations does not relate to Griffin Half Moon, because Plaintiffs' claims here do not concern any ESA-listed species or ESA consultations.  Nor does the industry's proposed relief regarding the 2016 RMP's "wildlife" section relate to this case, because Plaintiffs' claims do not concern any ESA-listed, proposed or candidate species.

## CONCLUSION

This Court should grant Defendant's cross-motion for summary judgment and dismiss Plaintiffs' NEPA action.

Dated this 17th day of July, 2020.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant United States Attorney

Page 33    Defendant's Reply in Support of Cross-Motion for Summary Judgment; *Klamath Siskiyou Wildlands Center v. BLM*, Case No. 1:19-cv-02069-CL

## CERTIFICATE OF COMPLIANCE

The preceding memorandum complies with the applicable page

limitation under LR 7-2(b)(1), because it does not exceed 35 pages.


Dated this 17th day of July, 2020.


                    Respectfully submitted,

                    BILLY J. WILLIAMS
                    United States Attorney
                    District of Oregon

                    */s/ Sean E. Martin*
                    SEAN E. MARTIN
                    Assistant U.S. Attorney