SUSAN JANE BROWN (OSB #054607)
Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon 97232
(503) 914-1323 | Phone
brown@westernlaw.org

SANGYE INCE-JOHANNSEN (OSB #193827)
Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340
Eugene, Oregon 97401
(541) 778-6626 | Phone
sangyeij@westernlaw.org

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, CASCADIA WILDLANDS, and SODA MOUNTAIN WILDERNESS COUNCIL,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>Defendant. | Case No. 1:19-cv-02069-CL<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

## MOTION

Pursuant to LR 54-3(a), Plaintiffs Klamath-Siskiyou Wildlands Center, Oregon Wild, Cascadia Wildlands, and Soda Mountain Wilderness Council ("KS Wild") hereby respectfully move this Court for $52,105.33 in attorneys' fees, costs, and other expenses under the Equal Access to Justice Act ("EAJA"). Counsel for KS Wild has conferred with counsel for Defendants U.S. Bureau of Land Management ("BLM"), and they (1) join in the parties' joint motion (filed this day) to stay consideration of this motion for 45 days to enable settlement discussions and (2) will oppose this motion if settlement is not reached. Declaration of Susan Jane M. Brown ¶ 25.

## BACKGROUND

On January 21, 2021, Magistrate Judge Clarke issued Findings and Recommendation ("F&Rs") granting KS Wild's motion for summary judgment in this case. ECF 49. BLM and defendant-intervenor Murphy Company filed objections to Magistrate Judge Clarke's Findings and Recommendation. ECF 56, 55. On March 12, 2021, KS Wild responded to both objections. ECF 57. On September 29, 2021, the Court adopted Magistrate Judge Clarke's Findings and Recommendation and granted KS Wild's motion for summary judgment, ECF 59, and issued an order to that effect on September 30, 2021, ECF 60. BLM appealed to the Ninth Circuit Court of Appeals, ECF 62, and subsequently dismissed its appeal. ECF 64. KS Wild timely files this motion within 30 days of entry of a non-appealable judgment. 28 U.S.C. § 2412(d)(1)(B).

**I.    KS WILD IS ENTITLED TO AN EAJA FEE AWARD.**

Under EAJA, a court shall award fees, costs, and other expenses to a prevailing party who is eligible for an award, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d).

PAGE 1 – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

To obtain an EAJA award, a party must prove that it is eligible under EAJA. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).

    A.    **KS Wild is Eligible under EAJA.**

A party is eligible for attorneys' fees, costs, and other expenses under EAJA if it: (1) is a "prevailing party"; that (2) incurred costs of litigation against the federal government; and (3) meets applicable size, net worth, or other criteria. 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(B).

KS Wild satisfies the first criterion for eligibility under EAJA because it is a "prevailing party." A party prevails under EAJA if it "succeed[s] on any significant issue in litigation which achieves some of the benefits [it] sought in bringing suit." *U.S. v. Real Property Known As 22249 Dolorosa St.*, 190 F.3d 977, 981 (9th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, KS Wild is a prevailing party, because it prevailed on the majority of its claims for declaratory relief. ECF 49 at 6–11; ECF 59 at 5. The Court vacated the challenged environmental assessment ("EA") and remanded the decision to the BLM. ECF 60. The relief KS Wild obtained surpasses the requirement that it achieve *some* of the relief it sought.

KS Wild also satisfies the second criterion for eligibility: it incurred legal expenses and costs against federal agencies. 28 U.S.C. § 2412(d)(2)(B). Finally, KS Wild and its co-plaintiffs satisfy the third criterion for eligibility: each is a non-profit registered under IRS section 501(c)(3), and each has fewer than 500 employees. *Id.*; Declaration of George Sexton ¶ 2; Declaration of Nick Cady ¶ 2; Declaration of Dave Willis ¶ 2; Declaration of Doug Heiken ¶ 2.

    B.    **BLM's Position was not Substantially Justified and No Special Circumstances Make an Award Unjust.**

"Once a party's eligibility has been proven, an award of fees is mandatory pursuant to EAJA unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love*, 924 F.2d at 1495 (citing 28 U.S.C. § 2412(d)(1)(A)). An

agency bears the burden of proving its position was substantially justified. *Or. Nat. Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995). The agency must make a "strong showing" in order to meet its burden. *Nat. Res. Def. Council v. Envt'l Prot. Agency*, 703 F.2d 700, 712 (3rd Cir. 1983). The agency also bears the burden of proving that any special circumstances make an award unjust. *Love*, 924 F.2d at 1495. BLM cannot meet either burden.

To determine if an agency's position was substantially justified, the court considers the reasonableness of the underlying government action and the position asserted by the agency in defending its validity. *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). The fact that the government litigation position may be justified is not enough—the court must also consider the underlying government conduct. *Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 388 (9th Cir. 1993); *Commissioner, INS v. Jean*, 496 U.S. 154, 158 n.7 (1990). The Ninth Circuit has held that "it will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Thangaraja v. Gonzales*, 428 F.3d 870, 874–75 (9th Cir. 2005) (citation omitted); *Marsh*, 52 F.3d at 1492 (finding no substantial justification where agency prepared inadequate NEPA analysis).

Here, BLM's position was not substantially justified. In recommending that the Court should grant KS Wild's motion for summary judgment in favor of plaintiffs' claim that the Griffin Half Moon EA failed to consider the direct, indirect, and cumulative effects on the great gray owl, Magistrate Judge Clarke first held that the BLM could not tier to the agency's 2016 programmatic environmental impact statement that lacked any information about the species. ECF 49 at 8–11. Specifically, Magistrate Judge Clarke found "the Resource Management Plan FEIS adopted in 2016 does not consider the impacts of the site-specific Project on great gray

PAGE 3 – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

owls. Instead, the 2016 FEIS considers the general consequences of adopting a land management plan that covers 2.6 million acres without any site-specific analysis of the Project area." *Id.* at 8. This led Magistrate Judge Clarke to conclude that "[i]n all, the 2016 FEIS simply does not contain a site-specific analysis to assess the environmental consequences on great gray owls within the Griffm Half Moon Planning Area. Thus while BLM argued that by tiering to the 2016 FEIS the REA satisfied its NEPA requirements with respect to the great gray owl, the FEIS does not contain a site-specific, Project-level analysis, and therefore 'cannot save' the REA." *Id*. at 9 (quoting *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 387 F.3d 989, 997 (9th Cir. 2004)).

      Next, Magistrate Judge Clarke rejected BLM's litigation position that the agency could rely on protection of great gray owl habitat in the late-successional reserve land use allocation in lieu of conducting a site-specific analysis of the Project's effect on the species. Magistrate Judge Clarke observed that "however, the Project is not located in this late successional reserve land use allocation: it is located in the Harvest Land Base. Nothing in the law allows the BLM to rely on suitable habitat in reserve land use allocations as a substitute for conducting a site-specific project-level analysis." ECF 49 at 10 (citing *Klamath-Siskiyou Wildlands Ctr.*, 387 F.3d at 997). Magistrate Judge Clarke concluded that "[i]n sum, while the 2016 RMP allocates a large network of reserve lands for great gray owls and predicts a long-term increase in species habitat, it fails to contain a site-specific Project area analysis of effects on great gray owls." *Id*.

      Ultimately, Magistrate Judge Clarke held that "[b]ecause the BLM failed to consider an important aspect of the problem of threats to great gray owls, its approval of the Project was arbitrary and capricious. . . . For these reasons, both defendants' motions for summary judgment should be denied as to Plaintiff's NEPA claim regarding the Project's effects on the great gray

PAGE 4 – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

owl. Plaintiff's motion on this claim should be granted." ECF 49 at 10–11 (citing *Motor Vehicle Mfrs. Ass'n of United States v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

In reviewing Magistrate Judge Clarke's Findings and Recommendation, the Court rejected all of BLM's objections to the F&Rs. ECF 59 at 2–5. The Court found that Magistrate Judge Clarke applied the appropriate standard of review and relevant statutory framework in recommending that the Court grant KS Wild's motion for summary judgment regarding great gray owls. *Id*. at 3–5. The Court then concluded that it "reviewed pertinent portions of the record de novo" and found "no errors in the F&R" and "no basis to modify the F&R." ECF 59 at 5. The Court adopted Magistrate Judge Clarke's F&R, granting Plaintiffs' Motion for Summary Judgment with respect their first claim for relief, and denying with respect to their second claim. *Id.* These factors confirm that the BLM's positions before and during litigation were not substantially justified, as neither the "litigation position" nor "underlying government conduct" were justified or supported by the administrative record.

Last, the "special circumstances" exception to eligibility under EAJA is a "'safety valve' [that] . . . gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 1418, 96th Cong., 2nd Sess. 5, 11, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. KS Wild is unaware of any special circumstances that would make an award unjust. *Cf. Meinhold v. U.S. Dep't of Def.*, 123 F.3d 1275, 1277 n.1 (9th Cir. 1997) (noting a party's "bad faith" in its consideration under EAJA).

## II.     KS WILD SEEKS REASONABLE RATES AND TIME.

EAJA provides that a court shall award "reasonable attorney fees" to prevailing parties. 28 U.S.C. § 2412(d)(2)(A). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate." *Hensley*, 461 U.S. at 433.

      A.      **KS Wild Seeks Reasonable Rates.**

EAJA sets a base rate of $125 per hour, but provides that a court may award higher rates if it "determines that an increase in the cost of living or a special factor . . . justifies a higher fee." *Id*. The Ninth Circuit has recognized the EAJA base rate should be increased to account for cost of living increases, anmd calls the adjusted rate the "lodestar" and approved it as "proper." *Real Property Known as 22249 Dolorosa Street*, 190 F.3d at 984–85. The lodestar is calculated by enhancing the EAJA base rate of $125 hourly by the consumer price index for urban consumers for the year in which fees were earned. *Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001). The lodestar hourly rates for attorneys within the Ninth Circuit are $205.25 for 2019, $207.78 for 2020, $217.54 for 2021. Statutory Maximum Rates Under the Equal Access to Justice Act, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (visited April 12 , 2022). The Ninth Circuit has not yet posted hourly rates for 2022, and instructs that in that case, the appropriate rate is that "posted for the previous period." *Id.*

However, "[w]here a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. 435. Recognizing that EAJA rates might be too low to enable clients to obtain qualified representation, EAJA provides for enhanced rates where special factors, such as the limited availability of qualified attorneys for the case, are present. In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court clarified that enhanced rates are allowed under EAJA when an attorney is "'qualified for the proceedings' in some specialized sense." *Id*. at 572. According to the Supreme Court, this "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in litigation." *Pierce*,

PAGE 6 – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

487 U.S. at 572. In turn, the Ninth Circuit has held that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge." *Love*, 924 F.2d at 1496.

A party seeking enhanced rates under EAJA must prove its attorneys: (1) possess distinctive knowledge and skills developed through a practice specialty; (2) those skills were needed in the litigation; and (3) those skills were not available elsewhere at the statutory rate. *Love*, 924 F.2d at 1496. Here, KS Wild is represented by Susan Jane Brown and Sangye Ince-Johannsen; KS Wild seeks EAJA lodestar rates for Mr. Ince-Johannsen, and enhanced rates for Ms. Brown, because she satisfies all criteria for enhanced rates.

Ms. Brown was the lead attorney in this case. Brown Decl. ¶ 17. She is the Wildlands Program Director at the Western Environmental Law Center, where she is also a senior staff attorney. *Id*. ¶ 1. She attended Lewis & Clark Law School, during which time she held a leadership position on the law journal *Environmental Review* and was awarded the Bernard O'Rourke Award for Environmental Scholarship. *Id*. ¶ 4. She graduated from Lewis and Clark Law School in 2000 with a Certificate in Environmental and Natural Resources Law. *Id*. After graduating, she was the executive director for a forest protection non-governmental organization and continued her litigation practice. *Id*. ¶ 5. In 2003, she returned to Lewis and Clark Law School as a clinical professor of law for the domestic environmental law clinic (now known as Earthrise) and began to teach the Forest Law and Policy course to upper division law students; she continues in this adjunct teaching role today. *Id*. ¶ 7. From 2007 to 2008, she worked for Congressman Peter DeFazio in his Washington, D.C. office as his Natural Resources Counsel. *Id*. ¶ 7. In 2009, she joined the Western Environmental Law Center as a staff attorney, assuming the role of Wildlands Program Director in 2010. *Id*. ¶ 8.

PAGE 7 – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Ms. Brown has practiced exclusively environmental law throughout the western United States for more than two decades, bringing numerous successful federal and state environmental lawsuits. *Id*. ¶ 11. She has also published numerous law review articles on environmental law topics, and has spoken individually or on panels on environmental law topics in continuing legal education fora. *Id*. ¶¶ 12 & 15. In 2020, the Oregon State Bar Environmental and Natural Resources Section awarded her its Annual Leadership Award. *Id*. ¶ 16.

Based on the foregoing, Ms. Brown surpasses the first criterion for obtaining enhanced rates under EAJA, because she has demonstrated distinctive knowledge and skills related to environmental litigation developed through her practice specialty in environmental law. Second, Stephanie Parent, an experienced environmental litigator who once worked as an attorney for the U.S. Department of Justice, declares that in her view, Ms. Brown's distinctive knowledge and skills were needed for KS Wild to prevail in this case. Declaration of Stephanie Parent, ¶¶ 3, 14 & 29. Third, Plaintiffs declare that they were unable to find qualified counsel who would take this case at the EAJA base rates. Sexton Decl. ¶¶ 3-4; Cady Decl. ¶ ¶¶ 3-4; Willis Decl. ¶¶ 3-4; Heiken Decl. ¶¶ 3-4.

Given that Ms. Brown is entitled to enhanced EAJA rates, EAJA provides that "[t]he amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished. . . ." 28 U.S.C. § 2412(d)(2)(A). Eugene is an appropriate forum to determine prevailing market rates. The local rules of the District of Oregon state: "As for the reasonable hourly rate, the Court uses the most recent Oregon State Bar Economic Survey as its initial benchmark." LR 54-3(a) (practice tip). The most recent survey (2017) provides that for attorneys such as Ms. Brown in private practice for the 95th percentile, $650 hourly is the billing rate in 2016 in the lower Willamette Valley.

https://www.osbar.org/_docs/resources/econsurveys/17economicsurvey.pdf at 42. However, based in part on discussions with attorneys in private practice in Eugene, Ms. Brown seeks $395 hourly in 2019, $405 hourly in 2020, $415 hourly in 2021, and $425 hourly in 2022. Brown Decl. ¶ 22. These rates are consistent with if not less than prevailing market rates in the District of Oregon. *Kathrens v. Bernhardt*, 505 F. Supp. 3d 1085, 1090–92 (D. Or. 2020) (awarding attorney fees based on enhanced hourly rates ranging from $320 to $675 in a federal environmental law case); *Greenpeace v. Stewart*, No. 17-35945, 2020 WL 2465321, *2 & *5 (9th Cir. May 12, 2020) (awarding attorney fees based on enhanced hourly rates up to $515 in a federal environmental case involving NEPA claims); *Landwatch v. Jefferies*, 2:17-cv-01004-SU, 2020 WL 8172994 (D. Or. Aug. 7, 2020), *vacated upon settlement*, *Central Oregon LandWatch v. Jeffries*, 2021 WL 1022584 (D. Or. Mar. 16, 2021) (awarding attorneys fees based on enhanced hourly rates up to to $540 in a federal environmental law case involving NEPA claims).

      **B.**    **KS Wild Seeks Reasonable Time.**

As noted, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A prevailing party's attorneys should be compensated "for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). The Ninth Circuit has held that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

PAGE 9 – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Ms. Brown seeks 114.52 hours and Mr. Ince-Johannsen seeks 24.20 hours for their work in this case. Brown Decl. ¶ 19, Ex. B; Declaration of Sangye Ince-Johannsen ¶ 7, Ex. A. To properly document time, each attorney must "simply list[] and identify the general subject matter of [their] time expenditures" on their timesheets. *Fischer v. SJB P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). KS Wild's attorneys surpass that test: each attorney details each task performed on each day working on this case. *Id*. Each attorney also omits potentially non-compensable time. *Id*.; *see Hensley*, 461 U.S. at 437 (requiring good faith omissions). Of note in this respect, KS Wild's attorneys omit time spent responding to defendant-intervenor's motion to intervene; time spent on an unsuccessful, but related, claim; and all time spent by Brodia Minter, an attorney who was co-counsel until August 21, 2020, ECF 47. Brown Decl. ¶ 20. In sum, KS Wild seeks a total of $51,651.93 in attorneys' fees.

### III.     KS WILD IS ENTITLED TO COSTS AND EXPENSES.

EAJA authorizes an award of "costs" as enumerated at 28 U.S.C. § 1920, 28 U.S.C. § 2412(a)(1), as well as "other expenses," 28 U.S.C. § 2412(d)(1)(A). The Ninth Circuit has interpreted "other expenses" under EAJA to include "expenses normally billed to a client," such as telephone calls, postage, and certain travel expenses. *Int'l Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986). KS Wild seeks $453.40 in costs and expenses, including the filing fee ($400), PACER reports ($6.90), and postage ($46.50). Brown Decl. ¶ 24, Ex. C (itemization of costs and expenses).

### CONCLUSION

The Court should award KS Wild $52,105.33 in fees, costs, and other expenses.

Date: April 15, 2022.          Respectfully submitted,

/s/ Susan Jane Brown
Susan Jane Brown

PAGE 10 – PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS